[S. F. No. 5316.  In Bank.—September 23, 1913.]

FRANK J. SULLIVAN, Petitioner, v. CHARLES GILDEA et al., as Election Commissioners of the City and County of San Francisco, Respondents.

PRIMARY ELECTION—PARTY NOMINATION PAPERS—LABOR UNION PARTY—PERCENTAGE OF VOTES CAST AT PREVIOUS ELECTIONS.—Under subdivision 5d of section 5 of the Primary Election Law of 1909 (Stats. 1909 p. 691), requiring party nomination papers to be signed, in case of a city and county primary election, by at least three per cent of the vote of the party in such city and county, based upon its vote for presidential elector at the last preceding presidential election, or if it then had no candidate for elector, upon the vote of that one of its candidates for other offices receiving the greatest number of votes, a candidate at the primary election of 1909 for nomination for the office of mayor of the city and county of San Francisco by the Union Labor Party—which party had had no candidate for presidential elector in 1908—is entitled to have his nomination papers received and filed and to be treated as a candidate for such nomination, if the same were signed by the required percentage of the party vote, whether such percentage was computed either upon the vote cast for the party candidate for the office of state treasurer at the election of 1906, or upon the vote cast by such party at the election of 1908 for a candidate for the office of superior judge, who had received the nomination of such party and of other political parties.

APPLICATION for a Writ of Mandate directed to the election commissioners of the city and county of San Francisco.

The facts are stated in the opinion of the court.

Frank J. Sullivan, in *pro per.*, for Petitioner.

Hugh J. McIsaac, for Respondents.

THE COURT.—In July, 1909, Frank J. Sullivan applied
to this court for a writ of mandate to compel the election
commissioners of the city and county of San Francisco to· re-
ceive and file nomination papers designating the petitioner
as a candidate for the nomination of the Union Labor Party
for the office of mayor of said city and county. An alterna-
tive writ was issued, returnable on July 15, 1909. On that
day a hearing was had. It then appeared that the time for
preparing ballots for the ensuing primary election was so
short that a decision in favor of petitioner could be of no
practical benefit to him unless rendered at once. The court
was of opinion that said petitioner was entitled to the relief
sought, and, accordingly, it was ordered from the bench that
a peremptory writ issue as prayed. Our attention is now
directed to the fact that no formal written opinion was filed
in the case, and this opinion is prepared and filed in response
to the suggestion so made.

The case turned on the construction of subdivision 5d of
section 5 of the Primary Election Law of 1909 (Stats. 1909,
p. 691). That section required nomination papers to be
signed, in case of a city and county primary election, by not
less than three nor more than ten per cent of the vote of the
party in such city and county. The basis of percentage was
declared to be the vote of the party for presidential elector
at the last preceding presidential election, or, if the party
had had no candidate for elector, the basis was to be the vote
of that one of its candidates for other offices receiving the
greatest number of votes. The Union Labor Party had had
no candidate for presidential elector in 1908. It had, how-
ever, at the general election of that year, nominated a candi-
date for judge of the superior court. Such candidate had
also received nominations from the Democratic and Good Gov-
ernment Parties. At the election of 1906, the Union Labor
Party had nominated a candidate for the office of state treas-
urer.

If the basis upon which the Union Labor vote was to be reckoned was the total vote of the candidate of the three parties for judge of the superior court, the nomination papers offered by Mr. Sullivan were not sufficient in number. If, however, the figure to be regarded was either the vote for the Union Labor nominee for state treasurer in 1906, or the balance remaining after deducting from the vote for judge of the superior court in 1908 the number of votes cast for a candidate having a Democratic nomination only, the petitioner had presented nomination papers in such number as to entitle him to a place on the ballot. The court was of the view that one of the two last-mentioned methods of computation was correct. There was some difference of opinion as to which of these constructions should prevail, but as, under either, the petitioner was entitled to the writ sought, no final determination on the question was reached.

It can be of no possible benefit to any one for us to attempt at this time to state at length the arguments for or against any particular construction of the statute, or the reasons which led the different members of the court to the conclusions expressed by them at the hearing. The statute has been superseded by later enactments radically changing the mode of conducting primary elections in the city and county (amendments to charter of San Francisco, ratified February 23, 1911; Stats. 1911, p. 1661), as well as in the state generally. (Stats. 1913, p. 1379.) The questions raised in the proceeding under discussion cannot arise under the laws now in force, and we therefore content ourselves with the foregoing statement of those questions and of the disposition of the application.